UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| TONYA MARIE ARLEDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV405-161 |
| ) | |
| JOHN E. POTTER, Postmaster ) | |
| General, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff filed the instant Title VII action against her former employer, the United States Postmaster General (or "Postal Service"), alleging discrimination on the basis of her sex. Docs. 1, 3. Plaintiff has filed a motion for summary judgment on her claims and defendant has filed a cross-motion for summary judgment seeking dismissal of plaintiff's claims. Docs. 87, 92. For the following reasons, plaintiff's motion should be DENIED, defendant's motion should be GRANTED, and plaintiff's complaint should be DISMISSED.

## I.   BACKGROUND

Plaintiff, a white female, was formerly employed by the United States Postal Service as a rural mail carrier in Savannah, Georgia.  Doc. 1. Beginning in July and August of 2003, plaintiff began "exhibiting bizarre behavior and making illogical statements."  Doc. 92, Ex. 1.  On July 14, 2003, plaintiff contacted the Postal Inspection System reporting, *inter alia*, that an apartment complex on her delivery route was conducting video and audio recordings of her and all young females, that red and green lights were emanating from her shower head in an attempt by someone to capture her image, and that CNN was repeating things that she had said to others. Id.  On August 5, 2003, plaintiff contacted the FBI with a similar complaint. Id.  The FBI agent with whom plaintiff spoke, who also happened to reside along plaintiff's delivery route, described her behavior as "paranoid, hysterical, and irrational" and "expressed deep concern regarding [her] fragile mental state and her knowledge and access to his personal residence."  Id.  Based on this behavior, on August 8, 2003, Savannah Postmaster Richard Palmer requested that plaintiff undergo a Fitness-for-

Duty Examination. Id. An examination was scheduled for September 22, 2003 with Dr. John A. Faber. Doc. 92, Ex. 3 at 32. Dr. Faber diagnosed plaintiff with a "Psychotic Disorder, Not Otherwise Specified" and determined that she was fit to return to full-time duty, but he recommended that she seek further psychiatric help and that her supervisor closely observe her to ensure that she did not become more paranoid. Doc. 92, Ex. 2. Plaintiff returned to work following this examination.

Upon returning to work, plaintiff continued to exhibit "[e]rratic and [a]berrant [b]ehavior," eventually prompting her supervisor to place her on "Emergency Suspension" effective December 11, 2003. Doc. 92, Ex. 3 at 28. Four incidents occurring over a four-day period led to this action. On December 8, 2003, plaintiff was approximately two and one-half hours late for work, and when she reported that day, she blamed her tardiness on her supervisor's failure to call and wake her up. Id. On December 9, 2003, plaintiff was reportedly talking to herself and making frequent trips to the restroom while crying. Id. On December 10, 2003, plaintiff "continued to exhibit outbreaks of talking loud [sic] to [herself], acting angry towards

everyone and acting generally upset." Id. Plaintiff also stated that "If someone gets shot today, at least we will know who done [sic] it." Id. Finally, on December 11, 2003, plaintiff's behavior continued in this manner, with plaintiff reportedly hitting her case and stating that "nobody understood what it felt like to stand in the case and know that all the men in this office were undressing you and having sex with you." Id. Based on these incidents, plaintiff's supervisor suspended plaintiff until she could "provide medical documentation to substantiate that [she was] capable of returning to work and capable of performing [her] duties without the type of behavior exhibited above." Id. The Postal Service required plaintiff to provide medical documentation from a licensed psychiatrist demonstrating her ability to return to work and allowed plaintiff to use her annual and sick leave for this purpose through December 31, 2003 so that she may obtain the proper assistance and documentation. Id.

Elizabeth Kitchens, Ph.D., evaluated plaintiff on December 29, 2003. Doc. 87, Ex. 2. In a letter dated February 13, 2004, Dr. Kitchens wrote that plaintiff "acknowledged some depression but denied any suicidal ideation" and that plaintiff "did not feel that she needed further treatment at this

4

time." Id. Plaintiff received a letter from an Assistant State Steward at the Georgia Rural Letter Carriers' Association, plaintiff's union, dated April 13, 2004 which explained to plaintiff that in order for her to return to her rural route, she had "to provide written documentation from a licensed psychiatrist MD, stating that [she was] not a threat to [herself] or other employees and [she was] capable of performing [her] job duties without limitation or restrictions." Doc. 92, Ex. 3 at 31. The letter informed plaintiff that the documentation that she had provided to the Postal Service (presumably the letter from Dr. Kitchens) did not contain the information necessary for her to return to work. Id. The letter notified plaintiff that it was her responsibility to acquire the proper documentation and that officials at the Postal Service had assured them that if and when she provided the necessary documents, her return to service would be "affected [sic] expeditiously." Id.

Plaintiff was further evaluated by Dr. Keith Hall, M.D., on May 7, 2004. Doc. 87, Ex. 3. Defendant received a letter from Dr. Hall dated May 18, 2004, in which Dr. Hall concluded that "[b]ased on all the information available to [him]," plaintiff was "not a threat to herself or other employees

of the Postal Service" and "should be capable of performing her job duties without limitation or restriction." Id. This letter, however, also failed to provide the information necessary for defendant to determine whether plaintiff was fit to return to work. After unsuccessfully attempting to clarify Dr. Hall's findings, the Medical Unit did not clear plaintiff to return to work based on this documentation. Doc. 92, Ex. 3 at 57. Plaintiff, therefore, was not permitted to return to work since she failed to provide the proper documentation indicating that she was fit to return to duty. Id. On October 25, 2004, plaintiff submitted her letter of resignation from the Postal Service, stating that she "[felt] it would be beneficial for [her] co-workers" for her to resign at that time. Doc. 92, Ex. 3 at 241.

Plaintiff initiated the instant Title VII action on September 7, 2005, alleging discrimination on the basis of sex and retaliation for prior employment opportunity activity. Doc. 1. Plaintiff filed her formal complaint on September 12, 2005, in which she makes several strange and clearly delusional allegations against individuals and entities other than the Postal Service.[1] Doc. 3. Since the majority of these allegations are not

---

[1] For example, she states she is suing her apartment complex, The Oaks at Wilmington Island, for gross negligence and failure to investigate her belief that her

proper in a Title VII lawsuit, where the Postal Service is the only defendant and sex discrimination is the principal cause of action, the Court recommended dismissal of all claims asserted by plaintiff other than her claims of sex discrimination. Doc. 23, adopted by doc. 26. Therefore, the only claim remaining before the Court is plaintiff's contention that she was subjected to adverse employment decisions on the basis of her sex.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing

---

apartments were bugged with cameras and listening devices. Doc. 3. Plaintiff appears to be convinced that the details of her private life within her various homes were recorded and subsequently broadcast over a local radio station. Id. She makes allegations against the radio station and two of its employees, local and state law enforcement agencies, local medical centers, and the Chatham County courts. Id. None of these individuals is a defendant in the instant action, and plaintiff makes no rational connection between the alleged acts of these individuals and the acts of the defendant Postal Service. Id.

laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th

Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

**B.    Title VII**

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging discrimination under Title VII must show that the employer intended to discriminate against him because of his membership in a particular protected group. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). Title VII also prohibits employers from discriminating against employees in retaliation for their opposition to any unlawful employment practice of the employer or in retaliation for making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

The plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001); Mora v. Univ. of Miami, 15 F. Supp. 2d 1324, 1333 (S.D. Fla. 1998). Where a plaintiff produces no direct or statistical evidence of discrimination, he must rely on circumstantial evidence from which an inference of intentional discrimination may be drawn. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313 (11th Cir. 1994). Where the plaintiff relies on circumstantial evidence, the court employs the burden-shifting framework set forth in McDonnell Douglas. Under a common formulation of the McDonnell Douglas framework, to establish a prima facie case of unlawful termination based on sex, the plaintiff must establish by a preponderance of the

evidence that: (1) he is a member of a protected class; (2) he was terminated from employment; (3) the employer treated similarly situated employees outside the protected class more favorably; and (4) he was qualified to do the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); see also Crapp v. City of Miami Beach, 242 F.3d 1017, 1020 (11th Cir. 2001). In that respect,

> [e]vidence that similarly situated employees are disciplined more leniently is admissible to support a disparate treatment claim when the plaintiff has established that the co-employees are in fact similarly situated. Thus, the plaintiff must show that the comparator employees are "involved in or accused of the same or similar conduct" yet are disciplined in a different, more favorable manner.

Anderson v. WBMG-42, 253 F.3d 561, 564 (11th Cir. 2001) (citations omitted).

If the plaintiff succeeds in proving a prima facie case of discrimination or retaliation, he has established a presumption of the unlawful conduct. Burdine, 450 U.S. at 253-54 ("The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for plaintiff's rejection."). The defendant then has the burden of producing a legitimate, nondiscriminatory reason for the challenged

11

employment action. See id. at 254 (emphasizing that defendant's burden is one of production: "The defendant need not persuade the court that it was actually motivated by the proffered reasons"). If a legitimate, nondiscriminatory reason is articulated by the defendant, the plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. Id. at 256.

## III. ANALYSIS

In her motion for summary judgment, plaintiff alleges that she was discriminated against because of her "unwelcoming advances of sexual behavior from the US Government." Doc. 87. Plaintiff then recounts her conversations with various apartment complexes and law enforcement agencies during which she discussed her belief that she was being videotaped and that her life was being threatened. Id. Plaintiff asserts that two different psychiatrists evaluated her and that both of them cleared her to return to work, but despite the examinations and letters written by the doctors, the Postal Service did not allow her to return to work. Id. Plaintiff contends that the letter from Dr. Hall contained the exact information that

the Postal Service required in order for her to be cleared to return to work. Id. Plaintiff claims that "[t]he level of interference with [her] right to safety in her work environment" and statements from a postal inspector and an anonymous FBI Agent "proves once again that [she] was discriminated against due to the fact [she] was not treated fairly." Id. Plaintiff contends that the Postal Service "did not investigate the severity and pure torture [she] was experiencing," that she was "FORCED to resign because of [g]overnmental threats," and that her decision to resign her position "was a fast and furious decision . . . made out of pure fear and anxiety because of the hostility." Id. (emphasis in original).

Plaintiff alleges that she "was treated differently," but she fails to state the individual with whom she is comparing herself or in what manner she was treated differently. Doc. 87. Plaintiff merely states that defendant denied her the opportunity to return to work after her two psychiatric evaluations but does not allege that a similarly situated employee was treated more favorably. Id. Defendant asserts that plaintiff has failed to establish a prima facie case of discrimination because she has produced "absolutely no evidence that [her] sex was a factor in the decisions [to

refuse to allow her to return to work]"and that plaintiff has failed to identify an appropriate comparator who was treated more favorably than her under similar circumstances  Doc. 93.

The evidence establishes that plaintiff was required to undergo a Fitness-for-Duty Examination[2] on September 22, 2003 after she began "exhibiting bizarre behavior and making illogical statements," such as expressing "her belief that there [was] a huge conspiracy to discredit her and possibly do her harm" and asking her manager "whether gangs exist[ed] in the Postal Service which may be in league with others outside the Postal Service against her."  Doc. 92, Ex. 1.  Psychiatrist Dr. John Faber evaluated plaintiff and determined that she could return to work but cautioned that she should be closely monitored and that further corrective action may be necessary in the future.  Doc. 92, Ex. 2.  Upon returning to work, plaintiff's behavior and mental state continued to deteriorate, resulting in plaintiff being placed on an "Emergency Placement in an Off

---

[2]The purpose of such an examination is "to ascertain whether or not the employee is medically capable of meeting the requirements of his or her job."  Doc. 92, Ex. 5, Postal Service Medical and Occupational Health Services Manual § 864.31. A fitness-for duty examination may be requested by management at any time and the exam may be repeated as necessary in order to safeguard an employee or coworker provided that the requesting official states specific reasons for his request.  Id. at § 864.32.

Duty Status" effective December 11, 2003. Doc. 92, Ex. 3 at 28. The notice issued to plaintiff about her status change informed her that she would be required to produce medical documentation from a licensed psychiatrist in order to receive clearance to return to work and permitted her to use her annual and sick leave through the end of the month in order to acquire that documentation. Id. The first letter plaintiff submitted, from Dr. Elizabeth Kitchens, simply stated that plaintiff "acknowledged some depression but denied any suicidal ideation" and that plaintiff "did not feel that she needed further treatment." Doc. 87, Ex. 2. This letter contained nothing further and, therefore, did not conform to the requirements of the Postal Service.[3] Even the union representing plaintiff informed her of the deficiency. Doc. 92, Ex. 3 at 31. Plaintiff was subsequently evaluated by Dr. Keith Hall, whose three-sentence letter to the Postal Service also failed to contain the information required for the Postal Service to make a determination as to whether plaintiff was fit to return to work. Id. at 34. The Postal Service Medical Unit in this district attempted to contact plaintiff's psychiatrist to

---

[3] Postal regulations in effect at that time provided that '[a]ll medical certifications must be detailed medical documentation and not simply a statement of ability to return to work. There must be sufficient information to make a determination that the employee can return to work without hazard to self or others." Doc. 92, Ex. 5, Postal Service Medical and Occupational Health Services Manual § 865.3.

clarify his brief statement but was apparently unable to do so. <u>Id.</u> Consequently, the Medical Unit did not clear plaintiff to return to work and plaintiff ultimately submitted her resignation.

Despite her allegations that defendant discriminated against her on the basis of her sex, plaintiff has failed to demonstrate that she was not reinstated for any reason other than her failure to provide the required documentation that she was fit to return to duty following her placement on emergency suspension. Moreover, plaintiff has failed to show that a male employee at the Postal Service was similarly situated to her and was treated more favorably under the same circumstances. Defendant has shown that it informed plaintiff of its reasons for placing her on emergency suspension and informed her of the information she was required to provide in order to receive clearance to return to work. Defendant allowed plaintiff to use her annual and sick leave days in order to receive an appropriate evaluation to determine her fitness to return to work. Although plaintiff submitted letters from two doctors attesting to her fitness for duty, these letters were merely conclusory statements that plaintiff was capable of returning to work and did not comply with Postal Service regulations

regarding such letters. Plaintiff failed to submit the required documentation and, consequently, the Postal Service Medical Unit did not clear her to return to work.

Plaintiff has failed to show that defendant's decision not to allow her to return to her position was related to her sex in any way. Instead, defendant had legitimate concerns about plaintiff's mental health[4] and the risks that plaintiff posed to herself and other postal employees. Although plaintiff asserts that she was treated differently, she has offered no evidence to support her assertion, and in fact, the evidence shows that any postal employee who is placed on emergency suspension would not be reinstated without providing the same type of documentation that defendant required from plaintiff. Thus, plaintiff has failed to establish a prima facie case of discrimination because she has failed to show that defendant treated a similarly situated employee outside of her protected class more favorably

---

[4] Indeed, plaintiff's mental health issues continue to plague her. Plaintiff filed twenty-three *pro se* complaints in this Court in March of this year, all of which were based on her delusions and extreme paranoia and were dismissed as either factually or legally frivolous pursuant to 28 U.S.C. § 1915(e)(2). Then, in July of this year, plaintiff filed an additional sixteen complaints which largely reasserted the baseless allegations of her previous filings. Those complaints have also been dismissed. As a result of this onslaught of frivolous filings, the Court has enjoined plaintiff from filing any further lawsuits or pleadings unrelated to the instant action in this District without permission of the Chief Judge. See CV406-163, doc. 6.

than it treated her. Furthermore, plaintiff has failed to demonstrate that defendant's legitimate, nondiscriminatory reason for not clearing her to return to work was a pretext to underlying sex discrimination.

## IV. CONCLUSION

Based on the foregoing, the evidence establishes that plaintiff was placed on emergency suspension status after several acts of bizarre and disturbing behavior at the workplace and was given an opportunity to obtain a medical evaluation and opinion as to her ability to return to work. Plaintiff was unable to secure such a report that complied with the standards of the Postal Service, and therefore, plaintiff was not permitted to return to work. Despite her allegations that this decision was taken against her on account of her sex, plaintiff has failed to produce any evidence to support her contentions. Moreover, plaintiff has failed to demonstrate that defendant's legitimate, nondiscriminatory reason for failing to clear her to return to duty was merely pretextual. Accordingly, plaintiff's motion for summary judgment should be DENIED, defendant's cross-motion for summary judgment should be GRANTED, and plaintiff's

complaint should be DISMISSED. All remaining outstanding motions should be DENIED as moot.

SO REPORTED AND RECOMMENDED this 21st day of November, 2006.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA